IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

EDMUND MAYE,

    Petitioner,

v.                                                              CASE NO. 4:08-cv-577-SPM-GRJ

KENNETH S. TUCKER,[1]

    Respondent.
_____/

## REPORT AND RECOMMENDATION

This case is before the Court on Doc. 16, Petitioner's *pro se* First Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. The Petition stems from Petitioner's nolo contendere plea to one count of burglary of a dwelling and jury trial conviction on seven counts of burglary of a dwelling, six counts of grand theft, one count of burglary of an occupied dwelling, and two counts of criminal mischief. Petitioner received a total sentence of 30 years imprisonment. Respondent filed a response to the First Amended Petition (hereafter "Petition") and an appendix with relevant portions of the state-court record, and Petitioner filed a reply. (Docs. 33, 36.) Upon due consideration of the Petition, the Response, the Reply, and the state-court record, the undersigned recommends that the Petition be denied.[2]

## State-Court Proceedings

The relevant portions of the record may be summarized as follows. Petitioner's

---

[1] Kenneth S. Tucker became Secretary of the Florida Department of Corrections on August 24, 2011, and is substituted as respondent.

[2] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

charges and sentence stem from a series of burglaries in January 2004. Nine homes in total were burglarized, resulting in four separate criminal cases that were later joined by the trial court. Petitioner pleaded nolo contendere to one count of burglary of an occupied dwelling in case number 04cf635 and deferred sentencing until after his jury trial on the remaining charges. Prior to trial, Petitioner filed a *pro se* motion to dismiss his public defender. The trial court conducted a Nelson[3] hearing and declined to appoint a new attorney. (Exh. J.)

Petitioner's jury trial took place December 15-16, 2004. At trial, the state presented evidence showing that in late January 2004, Petitioner burglarized several homes. Several homeowners testified that there homes were broken into and described the items that were taken. One homeowner and an off-duty police officer testified that they saw Petitioner in the course of burglarizing homes. In one home, Petitioner left a pile of clothes in the homeowner's bathroom and changed into the homeowner's clothing. DNA found on the clothing left in the home matched Petitioner. On the morning of January 27, 2004, police responding to the burglary reports noted that a motorcycle matching the description of one reported stolen was sitting in the driveway, with the key in the ignition and light on, of another home. Police noticed a brick was used to break a window in that home and the backdoor was shattered. No one was in the home, but police heard someone walking in the woods near the house. Police found Petitioner hiding in the woods, where they found several items reported stolen laying on the ground near Petitioner. Petitioner was wearing clothing taken from

---

[3]*Nelson v. State,* 274 So. 2d 256 (Fla. 4th DCA 1973).

the house where he discarded his own clothing, and in his pockets were several items that matched the homeowners' descriptions of stolen items. (Exh. K.)

The jury found Petitioner guilty of seven counts of burglary of a dwelling, six counts of grand theft, two counts of criminal mischief, and one count of burglary of an occupied dwelling. In case number 04cf328, which involved six burglaries, Petitioner was sentenced to 15 years imprisonment for five counts of burglary of a dwelling and 1 count of burglary of an occupied dwelling; he received 5 years imprisonment for the four counts of grand theft. Case numbers 04cf474 and 04cf583 (part of the jury trial), each involved one count of burglary of a dwelling, one count of grand theft, and one count of criminal mischief. In each of these cases, Petitioner was sentenced to 15 years for burglary of dwelling, 5 years for grand theft, and 60 days for criminal mischief. These two sentences were to run concurrent with one another but consecutive to the sentence in case number 04cf328. Finally, Petitioner was sentenced to 15 years for the burglary he pleaded nolo contendere to in case number 04cf635, to run concurrent with the sentences in case numbers 04cf474 and 04cf583 but consecutive to the sentence in case number 04cf328. Petitioner's total sentence, in light of two consecutive 15-year terms, was 30 years in prison. (Exhs. M, N, O, P, T.)

Petitioner appealed his conviction and sentence to the First District Court of Appeal, raising four issues. (Exh. Q.) The First DCA affirmed on May 4, 2006, but remanded for the correction of a scrivener's error in one of the judgment and sentences. (Exh. T.)

Petitioner filed a motion for postconviction relief on March 28, 2007, raising five claims: (1) the plea agreement and plea colloquy were inadequate because the trial

court failed to address the defendant to ensure that he understood the rights and consequences of the plea or place him under oath, (2) trial counsel failed to investigate the DNA evidence and a request a continuance to hire and expert, (3) counsel failed to suppress Lynell Thompson's identification of Petitioner because it was suggestive as he was in handcuffs, (4) the trial court failed to adequately investigate his claims requesting dismissal of his public defender at a *Nelson* hearing, and (5) trial counsel failed to file a motion to suppress the items found in the woods where the items were found miles apart and not tested for Petitioner's fingerprints.  (Exh. U.)  The trial court denied the motion and the First DCA *per curiam* affirmed.  (Exhs. U, Z.)

Petitioner filed a second motion for postconviction relief that was denied as successive.  (Exh. AA.)  The First DCA *per curiam* affirmed.  (Exhs. AA, BB.)  Petitioner then filed a petition for writ of habeas corpus in the trial court.  The trial court denied the motion as an improper vehicle for collaterally challenging a conviction, and even if construed as a motion for postconviction relief, it would be time-barred and successive.  (Exh. EE.)  Petitioner appealed, and the First DCA *per curiam* affirmed.  (Exh. FF.)

Petitioner filed the instant federal habeas petition, which Respondent concedes is timely, on December 29, 2008 and an amended petition on March 8, 2009.  (Docs. 1, 16.)  Petitioner asserts five claims identical to those raised and denied in his first motion for postconviction relief:  (1) the plea agreement and plea colloquy were inadequate, (2) trial counsel failed to investigate DNA evidence, (3) counsel failed to suppress Lynell Thompson's out-of-court identification of Petitioner, (4) the trial court failed to adequately investigate his claims requesting dismissal of his public defender at a *Nelson* hearing, and (5) trial counsel failed to file a motion to suppress the items found

in the woods.  (Doc. 16.)

Respondent concedes that Petitioner properly exhausted his three ineffective assistance of counsel claims but asserts that Petitioner is procedurally barred from raising the plea issue.  Respondent argues that the *Nelson* hearing claim is not cognizable on federal habeas corpus review and even if it were, Petitioner has not properly exhausted this claim.  Respondent contends that the petition for writ of habeas of corpus should be denied.  (Doc. 33.)

## Section 2254 Exhaustion Requirement

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1), (c).  Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  The requirement that a federal habeas corpus petitioner exhaust available state court remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  A petitioner must "do more than scatter some makeshift needles in the haystack of the state court record"; a reasonable reader should be able to understand the factual and legal bases for the claim.  *McNair v. Campbell*, 416 F.3d 1291, 1297 (11th Cir.2005) (quotations and citations omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is

obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id*. at 1302, 1306. A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010). To state a credible claim of actual innocence, a petitioner must present new reliable evidence that was not presented at trial showing that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

There are two prerequisites to federal habeas review: (1) "the applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated," and (2) "the applicant must have presented his claims in state court in a procedurally correct manner." *Upshaw v. Singletary,* 70 F.3d 576, 578-579 (11th Cir. 1995) (citations omitted). This means that "a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules, is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." *Alderman v. Zant,* 22 F.3d 1541, 1549 (11th Cir. 1994) (citing *Wainwright v. Sykes*, 433 U.S. 72 (1977)).

## Section 2254 Standard of Review

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). See also, *Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have

independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams* ).  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8  (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652  (2004).

## **Ineffective Assistance of Counsel**

Because Petitioner's claims raise the issue of counsel's effectiveness, a review of  *Strickland* is appropriate.   To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong.  *Id*. at 697.

When, as here, the state courts have denied an ineffective assistance of counsel

claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786 (2011). The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 788. When combined with the extra layer of deference that § 2254 provides, the result is double

deference and the question becomes whether "there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

## **Petitioner's Claims**

Upon an independent review of the trial record and the state court's disposition of these claims, and mindful of the high degree of deference that is afforded to the state court's assessment of the merits of Petitioner's claims, the Court concludes that Petitioner has presented no basis for federal habeas relief.

### **(1) Adequacy of the Plea Agreement and Plea Colloquoy**

Petitioner contends that his plea agreement was involuntary and violated his Due Process rights. Petitioner specifically argues that the trial court failed to: (1) place him under oath; (2) explain the charges or how the sentence would be structured in relation to the other charges pending; (3) ask the Petitioner about the offense; or (4) memorialize a factual basis for the plea. Petitioner contends that as part of the plea negotiations, his sentence was to run concurrent with the sentences that might be imposed if convicted of the other charges. (Doc. 16.)

The record indicates that Petitioner entered a nolo contendere plea to one count of burglary in case number 04cf635. Petitioner signed a written plea agreement and was informed by the court that his total sentencing exposure, if also convicted of the other charges, could be up to life in prison. Petitioner indicated that he understood the uncertain nature of his sentencing, the rights he was giving up, and the plea agreement

that he read and signed.  The trial court accepted the plea, finding it to be freely and voluntarily given.  (Exhs. F, G, H.)

Petitioner challenged the voluntariness of his plea in his first postconviction motion .  Petitioner specifically challenged the trial court's purported failure to place him under oath pursuant to Fla. R. Crim. Pro. 3.172.  The trial court denied this claim, finding it facially insufficient to warrant relief.  The trial court found that Petitioner failed "to allege any prejudice resulting from any alleged error by his counsel or the Court; that is, that he would have proceed to trial but for the error. . .Mere conclusory statements are insufficient to establish a prima facie claim for relief and do not entitle Defendant to an evidentiary hearing." (Exh. U.) (citing *Grosvenor v. State,* 874 So. 2d 1176, 1181 (Fla. 2004) and *Freeman v. State,* 761 So. 2d 1055, 1061 (Fla. 2000)).

Petitioner has failed to properly exhaust this claim.  He failed to raise it as a federal constitutional claim before the state court, challenging instead the state court's application of a state rule of criminal procedure.  A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief because no federal constitutional question is presented. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  This claim also fails because it is procedurally defaulted.  The trial court, in ruling on Petitioner's postconviction motion, dismissed it as facially insufficient and did not reach the merits of the claim.  Because Petitioner clearly would be barred from now pursuing this claim in state court, it is procedurally defaulted and foreclosed from federal review absent a showing of cause and prejudice or a fundamental miscarriage of justice.  Petitioner makes no claim that he can show cause

and prejudice for the default, and there is nothing in the record that suggests that a fundamental miscarriage of justice would result if the Court does not consider the claim.

**(2) Ineffective Assistance of Counsel - Failure to Investigate DNA Evidence**

Petitioner contends that he was denied the effective assistance of counsel because counsel failed to conduct an adequate pre-trial investigation of DNA evidence or retain an expert. Petitioner contends he was never in the residence where the clothing that contained his DNA was found[4] and had counsel investigated the DNA, he would have been acquitted of some charges. (Doc. 16.)

The record indicates that due to a clerical error, trial counsel did not receive a portion of discovery related to the DNA evidence that showed Petitioner's DNA was a match for DNA found on clothing left in one of the victim's home. Trial counsel did not discover the problem until after the trial began. Trial counsel requested the evidence be excluded, a continuance, or that a mistrial be granted. These requests were denied and the trial proceeded. (Exh. K.)

On postconviction review, the trial court denied Petitioner's claim, finding that Petitioner had not met the *Strickland* standard. Specifically, the trial court found that upon realizing he had not received the DNA discovery, "counsel made extensive argument requesting the Court exclude the evidence, allow him a continuance, or grant a mistrial," acting reasonably under the circumstances. The trial court also found that Defendant was unable to show prejudice because even if the DNA evidence were excluded, in light of other inculpatory evidence presented at trial (including the

---

[4]The Court notes that the homeowner identified the clothes Petitioner was wearing at the time of his arrest as the clothes taken from the home. (Exh. K.)

homeowner's identification of his clothes as the clothes Petitioner was wearing at the time of his arrest), there was not a reasonable probability the jury would have found him not guilty. (Exh. U.)

The Court agrees that Petitioner has failed to show that counsel rendered ineffective assistance where the delay in receiving the discovery was due to a clerical error and counsel subsequently argued that the evidence should be excluded, the trial continued, or a mistrial granted. Furthermore, on this record, there is not a reasonable probability that the jury would have found Petitioner not guilty but for counsel's failure to investigate the DNA evidence. Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of *Strickland.*

### (3) Ineffective Assistance of Counsel - Failure to Suppress Identification

Petitioner contends that he was denied the effective assistance of counsel because counsel failed to suppress a burglary victim's out-of-court identification of Petitioner. Petitioner contends that trial counsel should have filed a motion to suppress the identification because it was a "show-up" or "one-man lineup" and was highly prejudicial, especially because he was in handcuffs at the time of the show-up and because police reportedly shared with the witness, Lynell Thompson, information about the other burglaries. Petitioner contends that but for trial counsel's failure to move to suppress the identification, the trial would have had "a more favorable outcome" and the "case would have probably resulted in the charges being dismissed." (Doc. 16.)

Lynell Thompson testified at trial that on the morning of January 27, 2004, Petitioner rang her doorbell but she did not answer because she did not recognize the person. Thompson testified that a few minutes later she heard glass breaking in her

garage and ran downstairs to find Petitioner in the garage.  Petitioner, who was wearing a puffy khaki hunter jacket, jumped out the broken window and rode away on a motorcycle. The jacket and motorcycle were later identified as belonging to one of Petitioner's burglary victims.  Police responded to the area after the Thompson burglary and noticed a motorcycle parked in front of another that matched the description of the one Thompson said Petitioner left her house on.  The home had a broken window and shattered back door and it was in the woods near the home that Petitioner was eventually apprehended.  Thompson testified that approximately 2 to 2 ½ hours after her burglary, police asked her to drive to another location because they found a man who fit her description of her burglar.  Thompson went to the home and identified Petitioner as the man she saw in her home earlier that day.  (Exh. K.)

On postconviction review, the trial court denied Petitioner's claim.  The trial court found that while the procedure amounted to a "show-up", it was "'not invalid if it did not give rise to a substantial likelihood of irreparable misidentification under the totality of the circumstances.'" (Exh. U. (quoting *State v. Hernandez,* 841 So. 2d 469, 472 (Fla. 3d DCA 2002)).  The trial court noted that like the witness in *Hernandez*, Thompson had the opportunity to view Petitioner at the time of the crime, gave an accurate description of Petitioner, and made the identification soon after she saw Petitioner in her home. These circumstances would not give rise to a successful motion to suppress the out-of-court identification, and trial counsel could not be deemed ineffective for failing to raise a non-meritorious argument.  (Exh. U. (citing *Engle v. Dugger,* 576 So. 2d 696, 704 (Fla. 1991)).

The Supreme Court has stated that "[s]uggestive confrontations are disapproved

because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." *Neil v. Biggers*, 409 U.S. 188, 198 (1972). However, show-up identifications are permitted if, based on the totality of circumstances, the identification was reliable. *Id.* at 199. "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Id.* at 199-200. "The state court's findings on each of the *Biggers* factors are entitled to a presumption of correctness. . ." *Hawkins v. Sec., Fla. Dep't of Corr.,* 219 Fed. Appx. 904, 907 (11th Cir. 2007) (unpublished).[5]

The Court agrees that Petitioner has failed to show that counsel rendered ineffective assistance by not filing a motion to suppress that, considering the totality of circumstances, would have been denied. Nor has Petitioner rebutted the presumption of correctness of the state court's findings. *See Hawkins*, 219 Fed. Appx. at 907; § 2254(e)(1). Based on the totality of the circumstances as found by the state court, there was not a substantial likelihood of irreparable misidentification that would have led to the suppression of the out-of-court identification. Even assuming, *arguendo,* that trial counsel's actions were deficient, there is not a reasonable probability that the outcome of the trial would have been different had trial counsel filed a motion to suppress. The

---

[5]Although unpublished opinions are not binding on this Court, they are persuasive authority. 11th Cir. R. 36-2.

evidence of Petitioner's guilt was overwhelming and Thompson was not the only witness at trial who identified Petitioner.  Off duty police officer Greg Wilder, who resided in an apartment complex where one of the burglaries occurred and provided on-site security, also testified that he heard glass breaking in an apartment and saw Petitioner leave the apartment carrying a piece of electronics equipment under a towel.  Wilder drew his gun and identified himself as a police officer.  Petitioner then ran away from Wilder.  Wilder pursued Petitioner on foot but was unable to apprehend him.  (Exh. K., pp. 167-186.)  Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of *Strickland.*

**(4) Trial Court Error in *Nelson* Hearing**

Petitioner contends that when he complained about his court-appointed counsel, the trial court failed to conduct an adequate *Nelson* hearing as required by state law, resulting violations of his Due Process, Fifth Amendment, and Sixth Amendment rights. (Doc. 16.)

After his *nolo contendere* plea to one count of burglary in case number 04cf635 but before his jury trial on the remaining charges, Petitioner filed a *pro se* Motion for Certification of Conflict of Interest and to Dismiss Public Defender and for a *Nelson* hearing, complaining that his trial counsel was adverse and hostile to him.  In his motion, Petitioner complained that his trial counsel did not communicate with him frequently enough, did not investigate any pre-trial motions, and did not discuss any defenses.  (Exh. I.)  At the *Nelson* hearing, Petitioner stated that based on the information the prosecutor gave trial counsel, trial counsel could not effectively represent him.  The trial judge explained that after discovery, at some point the client

and attorney meet to discuss the case. Petitioner stated that it was okay for trial counsel to continue representing him, then stated it wasn't okay but he had no choice. The trial judge asked Petitioner what specifically trial counsel had failed to do. Petitioner responded: "Specifically I don't have a choice, you know. I don't have a choice. You already made the decision." The trial judge found no legal basis to replace counsel and denied relief as to the *Nelson* hearing. (Exh. J.) Petitioner raised this issue in his first motion for postconviction relief, but the trial court denied his claim as procedurally barred because it was not raised on direct appeal. The trial court also noted that the claim was "conclusively refuted by the record." (Exh. U.)

*Nelson* held that trial courts must make certain inquiries when an indigent defendant appears to desire to discharge his court-appointed counsel. If incompetency of counsel is the reason, the trial court must make a sufficient inquiry to determine if counsel is rendering ineffective assistance. *Nelson v. State,* 274 So. 2d 256, 258 (Fla. 4th DCA 1973). This is a requirement of state law and is not a federal constitutional matter. The Supreme Court has not established a procedure for use where an indigent criminal defendant wants another lawyer. *See, e.g., United States v. Garey,* 540 F.3d 1253, 1262 (11th Cir. 2008). "Although the *Sixth Amendment* guarantees counsel, it does not grant defendants the unqualified right to counsel of their choice. . .In practical terms, then, defendants who lack the means to hire a private attorney must either accept the counsel appointed to represent them or represent themselves." *Id.* A defendant must show good cause–a fundamental problem that would lead to an apparently unjust verdict–in order to demand a different appointed lawyer. *Id.* (citing *Thomas v. Wainwright,* 767 F. 2d 738 (11th Cir. 1985) and *United States v. Young,* 482

F. 2d 993, 995 (5th Cir. 1973)).

Petitioner's *Nelson* claim challenges the application of state law. It does not raise a federal constitutional claim and therefore is not cognizable in federal habeas review. *See Ortiz v. McNeil,* 2010 Dist. LEXIS 132265, 2010 WL 4983599 (M.D. Fla. 2010); 28 U.S.C. § 2254(a); *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). Petitioner's *Nelson* claim also fails because it is procedurally defaulted. The trial court, in ruling on Petitioner's postconviction motion, found this claim procedurally barred because it was not raised on appeal. (Exh. U.) Because Petitioner clearly would be barred from now pursuing this claim in state court, it is procedurally defaulted and foreclosed from federal review absent a showing of cause and prejudice or a fundamental miscarriage of justice. Petitioner makes no claim that he can show cause and prejudice for the default, and there is nothing in the record that suggests that a fundamental miscarriage of justice would result if the Court does not consider the claim.

## (5) Ineffective Assistance of Counsel - Failure to Suppress Items Found in Woods

Petitioner contends that he was denied the effective assistance of counsel because counsel failed to move to suppress evidence found on the ground in the wooded area where Petitioner was apprehended. Petitioner contends that the motion was warranted because "[t]here was no nexus between the evidence found in the woods and the accused which would demonstrate that he was in possession of those items." Petitioner contends that the items, including credit cards, a flashlight, digital recorder, and silver coins were found in two places in the woods, miles apart, and some of the items were not tested for Petitioner's fingerprints. Petitioner does not appear to deny that the items were in his possession but describes the evidence as "tainted" that

could have been "thrown in the large wooden area by anyone."  Petitioner alleges that he was denied his "right to subject the State's case to a meaningful adversarial testing" and that there is a reasonable probability that but for counsel's failure, "the results of the proceeding would have been different."  (Doc. 16.)

On postconviction review, the trial court denied Petitioner's claim, finding that it was "without merit because it is based on the incorrect assumption that only evidence found within Defendant's actual physical possession at the time of his arrest may be used at trial."  The trial court also found that Petitioner had not shown prejudice because there no reasonable probability that the jury would have found him not guilty if the evidence would have been suppressed.  (Exh. U.)

The Court agrees that Petitioner has failed to show that counsel rendered ineffective assistance where there were no grounds to file a motion to suppress the evidence found in the woods.  Even assuming, *arguendo,* that trial counsel's actions were deficient, on this record there is not a reasonable probability the outcome of the trial would have been different had trial counsel filed a motion to suppress.  The evidence against Petitioner was overwhelming, and as the trial court succinctly stated: "Defendant was seen near the wooded area where the items were found, was arrested wearing clothing belonging to one of the victims, and items from the numerous burglaries were found in Defendant's pockets."  (Exh. U (internal citations omitted).) This is in addition to the eyewitness and DNA evidence presented at trial.  Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of *Strickland.*

## Conclusion

For the foregoing reasons it is respectfully **RECOMMENDED** that the First Amended Petition for a Writ of Habeas Corpus, Doc. 16, be **DENIED,** and that a certificate of appealability be **DENIED**.

**IN CHAMBERS** this 26th day of October 2011.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.